1848 Raymond LaPointe v. Silko Motor Sales, Inc. Good morning. May it please the Court, I'm David Allabert for the Plaintiff Raymond LaPointe in this matter, and with the Court's permission I'd like to reserve two minutes here. Yes, thank you. This case presents the fundamental rule that in deciding a motion for summary judgment, the Court must construe all facts and the reasonable inferences to be drawn from those facts in favor of the non-moving party, and we submit that did not happen below. The two primary issues that the trial court framed were, was the defect, a small pool of oil, open and obvious, objectively. The trial court specified objectively open and obvious, and should it have been anticipated by the Plaintiff in this case, given the fact that he had experience cleaning this floor in an automobile dealership. We submit that the evidence on that would permit an inference that it was not open and obvious. First of all, I'm not sure why the trial court specified objectively rather than was it open and obvious to this Plaintiff under the conditions that existed at the time of the injury. As the record demonstrates, the defect occurred in close proximity to a pallet of automotive parts, presumably an engine that was not definitively identified below, but automotive parts on a 4x4 pallet stacked waist high. Thank you. I think we're familiar with the facts. As you know, we can affirm on any basis that's apparent in the record. Your opponent makes, I think they do adopt the open and obvious point, but they make a somewhat different argument. They say that this risk was, I think as they put it, inherent in the very work that your client undertook with this contract. I mean, he was hired to clean up these facilities, including the floors, to clean up oil spills on the floor. That was just the nature of the job. If that's so, and it does appear to be so, that's what he was supposed to do. The suggestion is that he's claiming that there was an obligation to warn him about the very job that he had undertaken to do. Why isn't that a winning argument in a case like this? Well, the claim, Your Honor, is really two-fold. That there was a duty to act reasonably under PORIA for the benefit of contractors or independent contractors, reasonably to be expected on the property. And the second was a duty to warn. I do agree that the duty to warn is the weaker claim here. And I have not challenged in my brief the trial court's finding on duty to warn. But the duty under PORIA remained, in our view. PORIA, the language in PORIA, when they did away with the hidden defect rule, the antiquated hidden defect rule, PORIA said it should not be incumbent on the employee to seek out and discover those defects or dangerous conditions that have compromised the safety of his or her working environment. PORIA did say that the parties are free to allocate the risk. And we see that most frequently in construction contracts, where the general contractor assumes the duty to implement a safety policy, where an independent subcontractor, rather, assumes the duty and the owner can allocate those risks and assume a duty as well. That didn't happen here. We pointed out that the Callahan case cited PORIA. In Callahan, the requested jury charge was if the employee were injured, a remedy, a defect that he was hired to address, he can't collect. The trial court refused to give that charge and the appellate court upheld that refusal. Counsel, can I go back? Let's put aside duty to warn. He admitted that there was oil and gas slicks everywhere in this workplace from his prior experience. That being so, what is the theory you are pursuing? It can't be that you can walk away from his admissions because you can't. So take those as a given and tell us what your theory is that you're entitled to a recovery. This was a dealership with various bays. What is the theory? The theory is that one bay in particular was a clean storage bay. He did not say that. He said there's oil and gas everywhere. That's true. And that's why in the 30B6 deposition of the defendant, I explored that. What does everywhere mean in the context of an answer? And the defendant said, not in that bay. That's a clean bay we use for storage. We do no automotive work in that bay. No, the defendant didn't say that. You do have some testimony from somewhere, I've forgotten where, where somebody refers to that bay as clean. Who's that from? That's the defendant, Your Honor. Okay, that's the defendant. And you think that's enough to overcome the admission that your client said there was oil and gas everywhere? Well, when you say overcome the admission, if we're going to draw reasonable inferences in favor of the non-moving party, the reasonable inferences... and you're stuck with them. I think you're trying to say, no, even if there's an admission, I have a way to get to the jury to explain away that admission. Well, let me give you an example. If my client testified exactly as we've just discussed, and the defendant got up and said, I disagree with that. There's not oil and grease everywhere. He doesn't disagree? But he did say, this is a clean bay. We do not know that the word clean means there was never any oil and gas in that. It may well be a reference to something else entirely. Well, the second part of the statement was, we don't do automotive work in that bay. It's a storage bay. Yes. So... And your theory is that the stuff that was there leaked onto the floor, and it was similar to the leaks elsewhere? No, because their policy was to fully drain those parts. They did not want oil and grease on the floor there. Counsel, in terms of admissions, didn't your client also acknowledge that this entire area was well illuminated? I mean, that goes to the, I guess, the open and obvious danger. I mean, he did seem to acknowledge that the lighting there was quite good, suggesting that he was in a position to see what was on the floor. He did acknowledge that the illumination was quite good, did he not? Well, I would say two things, Your Honor. Yes, he did. But in the course of making that statement, he said, these are mercury vapor lights. I turned them on, and they take a few minutes to warm up. But there are lights everywhere. Now, that doesn't mean you could see something under a walled desk if it's obscured, despite the lighting. It wasn't an issue of I couldn't see because of lights. It was an issue of I couldn't see because it was on the other side of the pallet. Thank you. Thank you, Your Honor. This is John Glebe for Silco Motor Sales, Inc., if it pleases the Court. Your Honor, I think you correctly state that the Poirier decision is outcome determinative on this matter. But what the Counsel says about the Poirier decision is right with respect to the obligation of a landowner to warn of defects to independent contractors coming on the property. But what he's ignoring is that Poirier specifically carves out this exception for independent contractors coming on the property who are there to remedy something. And they're injured by the very item they were there to remedy. And that's what they call an inherent risk in the work to be performed. And in those cases where the employee is injured as a result of the inherent risk, there is no duty on the part of the landowner. And the case law is the Poirier case. The case that is cited by Brother Counsel Callahan, it's a very different case because they were seeking a jury instruction to say, well, we're not responsible for the injuries to this employee as he was walking through a trench. Now, the trench was not part of the scope of work for the employee's employer in the Callahan matter. It was outside of that scope of work. So the trial judge correctly said, I'm not going to instruct the jury on that. And the appeals court even said it would have been wrong to instruct the jury on that in this case. But in this matter, it's very clear that cleaning oil and fluids from the service department floor was exactly what Silco contracted with GN Pro to do. We have the contract. It's an exhibit. They were to machine scrub the floors six times a week with a degreaser. So clearly, the use of the machine scrubbers and the degreasers indicate there's going to be fluids on the floor. Counselor, but isn't your opponent correct that it's Mr. Yule? Mr. Yule works for the defendant. Is that correct? Mr. Costa or Mr. Yule? I'm looking at a dependent, Geoffrey Yule. Yes, Mr. Yule. He is one of the managers of the- Right. And he, in a deposition, he is the one who I gather acknowledges that this area where the accident happened, this was not an area where cars were serviced. This was a storage area. And since it was a storage area, and I think this is the implication that Paul was trying to draw, it would be unusual to find oil on the floor if it was an area that was ordinarily clean. I'll address that with- I have three points on that, Your Honor. First of all, that was the testimony. But given the pluriot case and the obligations of the contract, the response by Silco is somewhat straightforward. It is, so what? What difference does it make how the oil got there? You had a responsibility to clean it. Silco acknowledges that during their daily operations, they're not trying to spill oil on the floor, but it's going to happen. And they're going to use mats and whatever they can do to clean it. But at the end of the day, they're going to have an issue with fluids and oil on the floor that could create a slip hazard. So they contract with Janpro to clean that. So regardless of whether we create a condition through our own negligence and violation of our own policy or not, it's really irrelevant under the pluriot standard. A person could burn down their house to their own negligence. They hire a contractor to come in and make the repairs. If they're injured somehow and at a risk they know, a person's negligence in creating a hazard is irrelevant. So how that oil got on the floor, Janpro doesn't care about that. Whether it was a spill by a third party or if it was someone at Silco that did it, they're contractually obligated to clean it up no matter how it got there. The other part of that is, Your Honor, Mr. LaPointe didn't know about Mr. Costa's impressions of that area of the service being clean. So he had no reliance upon the fact that Silco typically didn't use that area. He was only there three times. He was there to replace the normal cleaning company. So this testimony elicited from Mr. Costa and Mr. Ewell three years after the incident, when they had no notice of it until the complaint was filed, two years, eight months after the incident. And they're going back now talking about the condition of the service bay and how they keep it. But, you know, the idea is Mr. LaPointe didn't know that. He didn't know it was Silco's practice not to typically use that to store parts. He was there under a contract that required him to clean the entire service department floor, including that area. And we had a spoliation issue because there's an inherent unfairness to my client that they find out about something three years later. They never get to investigate it on their own. They have to take Mr. LaPointe's word for it. But he prepares an affidavit in response to that, and he says, after I slipped on the oil, I cleaned it up as I was obligated to do under the contract. So that oil in that area falls within the purvey of the contract, and he cleaned it up just as he would in any other part of the service bay floor. He would scrub the floor, this is his way to do it, after he'd put out the trash. Theoretically, he could have scrubbed the floor before he put out the trash, and then he would have cleaned this very oil that he fell on, but instead he decided to proceed across the service bay department floor before having cleaned the oil. Also, with respect to this clean bay theory, it was never presented at the district court summary judgment hearing. It's not part of the material facts that we stipulated to. It was raised now in the first time for appeal. Was it somewhere in the deposition transcript that was submitted to the district court? Yes. But was it one of our agreed-on facts that Judge Paige Kelly looked at and referred to in making her decision? No. So, you know, I think Mr. LaPointe has to rely upon the agreed facts that we proposed at the district court level. Here on appeal, he's trying to bring up new facts, which I think, as I've argued, are really irrelevant regardless to the claims. You know, they had a specific obligation under this contract to clean oils off the floor. The very hazard that he was hired to repair, he slipped on and injured himself. It's a very clear case of a hazard inherent to the work to be performed, and it falls under the Poirier case with respect to that, that the landowner would have no obligation to remedy that defect or warn of it to the person that they hired to repair it. Your Honor, with respect to the open and obvious part, I do think Judge Paige Kelly's decision, you know, kind of vacillates a little bit between the Poirier requirements, because she does mention this case about a contractor hired to remove a beehive, and saying, well, you got stung by a bee, but you agreed to remove the beehive. You can't bring a claim for that. And the open and obvious part of it. I think the open and obvious, in this case, it's multifactorial. It's, one, we had a welded area. The condition would have been plain to see had Mr. LaPointe been looking. I mean, the defense is, well, he was walking around the pallet and didn't see it. Well, he wasn't looking at the floor or he would have seen it. And part of that is, you know, you go back to the contract, he knows there's oil on the floor. He knows from his past experience there's going to be oil all over the place. I think that makes, in this matter, the oil on the floor an open and obvious danger for Mr. LaPointe, in that he's aware of its presence on the service room floor. It's a welded area. It's an 8-inch puddle. It's something he could have seen and avoided. Thank you very much. Thank you. Just very briefly, my brother indicates, so there was oil in the storage area. So what? I think the so what is this. The Poria Court said, The ordinary risks of service are those that are not created by the negligence or breach of duty on the part of the employer. Extraordinary risks, on the other hand, are those that are created by the employer's negligence. We suggest this was an extraordinary risk because it stemmed from negligence in not fully draining the parts that were to be put into a clean area. As the defense witness testified, safety was one of the concerns in our in-house rule that parts be fully drained before they're put up, ready to go out the door for transportation wherever. So that, coupled with the statement which follows in Poria that I read, it should not be incumbent on the employee to seek out and discover those defects or dangerous conditions that have compromised the safety of his or her working environment. This would have required seeking out. He was headed to the button on the wall to open the door. As he came around, the pallet went down. I mean, we know that we don't walk staring at the floor. We don't walk staring at the ceiling. We walk with various intentions in mind, and one of his was to push the button on the wall after getting around the pallet. So we see this very differently. I found it to be an interesting case to brief, and I'm sure it will be an interesting decision to read. Thank you. Thank you. Thank you both. Thank you. All rise. This session of the Honorable Medicaid Court Appeals is now recessed until 930. Until next month, God save the United States of America and this honorable court.